UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
YANG SHEN and XIAOXIA YU,          :

                               :       **REPORT AND**

               Plaintiffs,   :       **RECOMMENDATION**

                               :

        -against-            :       19-CV-02212 (ERK) (PK)

                               :

GJ GROUP USA INC. and ZEXIN JIANG,  :

                               :

             Defendants.  :
-------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

Yang Shen ("Shen") and XiaoXia Yu ("Yu," and collectively, "Plaintiffs") brought this action against GJ Group USA Inc. ("GJ Group") and Zexin Jiang ("Jiang," and collectively, "Defendants") for violations of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. ("FLSA") and the New York Labor Law, N.Y. Lab. Law § 1 et seq. ("NYLL") (*See* Compl., Dkt. 1.) Before the undersigned on referral from the Honorable Edward R. Korman is Plaintiffs' Motion for Default Judgment ("Motion," Dkt. 24.) For the reasons stated herein, the undersigned respectfully recommends that the Motion be granted.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken from the Complaint, the testimony of Plaintiffs at an inquest held on April 14, 2021 (Inquest Transcript ("Tr."), Dkt. 29), and Plaintiffs' supplemental letter. (Plaintiffs' Letter dated Apr. 27, 2021 ("Pls' Letter," Dkt. 28.)

GJ Group employed Shen as a meal shopper at its restaurant and take out place[1] in Flushing, New York from September 1, 2017 through May 30, 2018. (Compl. ¶ 13; Tr. at 9:19-22, 14:25-15:1.)

---

[1] Plaintiffs described GJ Group as "a restaurant and also a takeout restaurant as well. They have an online platform and also a physical store." (Tr. at 9:19-22.) It was also described as a "shop." (Tr. at 6:19.)

It employed Yu as a bookkeeper and cashier from January 1, 2018 through May 30, 2018.[2]  (Compl. ¶ 14; Tr. at 5:5-7, 13:25-14:8.)  Defendant Jiang was in charge of all areas of GJ Group, including the hiring, management and termination of Plaintiffs, as well as determining their rates of pay and work schedules; he was also their direct supervisor.  (Compl. ¶¶ 22-24; Tr. at 5:16-6:3, 15:2-9.)  GJ Group had monthly sales of approximately $100,000.  (Tr. at 12:8-10; *see also* Compl. ¶ 16 (alleging annual gross sales in excess of $500,000).)

Shen worked six days per week, from Monday to Saturday, except that one week each month he worked only five days.  (Tr. at 17:22-18:15.)  Defendants paid Shen a flat daily amount of $120 per day.  (Compl. ¶ 29.)  Shen worked approximately twelve hours each day.  (Tr. at 18:16-23.)

Yu worked seven days per week.  (Tr. at 6:17-21.)  On four of the seven days, Yu worked in the "shop" as a cashier for approximately twelve hours, and then worked from home as a bookkeeper for approximately three or three and a half hours.  (Tr. at 7:17-9:5.)  On the other three days, Yu did not work in the "shop," but only worked for approximately three or three and a half hours as a bookkeeper from home.  (*Id.*)  Defendants paid Yu a flat daily amount of $170 per day when she worked both as a cashier and bookkeeper, and $50 per day on the days when she only worked as a bookkeeper.  (Compl. ¶¶ 46-47.)

Defendants never paid an overtime rate when Plaintiffs worked more than 40 hours a week.  (*Id.* ¶ 76.)  Defendants also never paid spread of hours compensation for days on which Plaintiffs worked shifts lasting more than ten hours.  (*Id.* ¶ 93.)  Defendants never provided Plaintiffs with any wage notices upon hiring or afterwards, or any wage statements along with their weekly earnings.  (*Id.* ¶¶ 109, 116.)  Defendants paid Plaintiffs in cash each week.  (Tr. at 16:11-12.)  Defendants did not

---

[2] Although the Complaint alleges that Yu worked as an "accountant" and that she began working for GJ Group on December 1, 2017 (Compl. ¶¶ 14, 40, 42, 43, 44, 46, 47), she testified that she worked as a bookkeeper and that her employment began on January 1, 2018.  The Court accepts Yu's testimony as more accurate.  (Tr. at 5:5-7.)

maintain full and accurate time records for Plaintiffs' work hours.  (Compl. ¶¶ 3, 35, 53.)  In addition, Defendants did not pay Shen[3] and Yu any wages from March 19, 2018 to April 15, 2018.  (Tr. at 11:14-16, 16:13-18.)

Plaintiffs filed the Complaint on April 15, 2019, alleging minimum wage violations under the FLSA and NYLL (Counts 1 and 2), overtime wage violations under the FLSA and NYLL (Counts 3 and 4), "failure to pay wages" under NYLL (Count 5), failure to pay spread of hours compensation under NYLL (Count 6), "meal time violations" under the NYLL (Count 7), failure to maintain records for at least six years (Count 8), failure to provide wage notices under NYLL (Count 9), and failure to provide wage statements pursuant to NYLL (Count 10).[4]

Defendants failed to answer or otherwise respond to the Complaint, and Plaintiffs requested certificates of default (Dkts. 13, 15), which the Clerk entered (Dkts. 14, 16).  Plaintiffs filed the Motion on August 25, 2020.

## DISCUSSION

### I.    Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for entry of a default judgment.  First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default.  Fed. R. Civ. P. 55(a).  The plaintiff may then move the court for an entry of default judgment.  Fed. R. Civ. P. 55(b)(2).  "[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right."  *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010).  A plaintiff must take several steps before the court will grant default judgment.  The plaintiff must demonstrate proper service of the summons and

---

[3] Shen testified during the Inquest that Defendants did not pay him from March 18 or 19, 2018 to April 15, 2018.  (Tr. at 16:13-18.)  The undersigned calculates the unpaid wages using March 18, 2018 as the first date, as alleged in the Complaint.  (Compl. ¶ 30.)

[4] The Motion does not seek judgment or damages for Counts 5, 7 and 8.

complaint. *See Advanced Capital Commercial Group, Inc. v. Suarez*, No. 09-CV-5558 (DRH) (GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013). The court "may first assure itself that it has personal jurisdiction over the defendant." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (internal quotations omitted). The plaintiff must establish compliance with the procedural requirements of Local Civ. Rules 7.1 and 55.2.

The court must also determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). "[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). In considering a motion for default judgment, a court accepts a plaintiff's "factual allegations as true and draw[s] all reasonable inferences in [the plaintiff's] favor." *Finkel*, 577 F.3d at 84. However, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-06476 (ARR)(PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *R&R adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020).

"The court may conduct hearings ... when, to enter or effectuate judgment, it needs to ... establish the truth of any allegation by evidence [or] investigate any other matter." Fed. R. Civ. P. 55(b)(2).

A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established ...." *Klideris v. Trattoria El Greco*, No. 10-CV-4288 (JBW)(CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *R&R adopted*, 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012). In the context of a motion for default judgment on FLSA and NYLL claims, "the plaintiff's recollection and estimates of hours worked are presumed to be correct." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012); *see also Santillan v.*

*Henao*, 822 F. Supp. 2d 284, 294 (E.D.N.Y. 2011) ("[I]n the absence of rebuttal by defendants, or where the employer has defaulted, as here, the employee's recollection and estimates of hours worked are presumed to be correct." (quotations, citations, and alterations omitted)). "The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of [the recordkeeping requirements] of the [FLSA]." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688 (1946).

## II.    Jurisdiction

### 1.    Subject Matter Jurisdiction

The Court has original jurisdiction over Plaintiffs' FLSA claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

### 2.    Service on the Defendants

Plaintiffs properly served GJ Group by delivering and leaving a copy of the Summons and Complaint with the New York Secretary of State. *See* N.Y. Bus. Corp. L. § 306(b)(1); Fed R. Civ. P. 4(h)(1)(B). (Dkt. 11.) Plaintiffs served Jiang by delivering a copy of the Summons and Complaint to a person of suitable age at Jiang's actual place of business and then mailing a copy to his business address. N.Y. C.P.L.R. § 308(2); Fed. R. Civ. P. 4(e). (Dkt. 4.) Service on both defendants was, thus, proper.

### 3.    Personal Jurisdiction

"[S]erving a summons ... establishes personal jurisdiction over a defendant ... who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (quoting Fed. R. Civ. P. 4(k)(1)(A).)

New York has general jurisdiction over corporations formed under its laws and operating within the state. *See Francis v. Ideal Masonry, Inc.,* No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at

*3 (E.D.N.Y. Aug. 3, 2018), *R&R adopted*, 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018).  Because GJ Group is a New York corporation operating within New York and was properly served with the Summons and Complaint, the Court has personal jurisdiction over it.  (Dkt. 11.)

New York has specific jurisdiction over individuals who "transact any business within the state" so long as "'the cause of action arises from that transaction.'"  *Francis*, 2018 WL 4292171 at *3 (quoting *Licci ex rel. Licci*, 673 F.3d at 60).  Jiang was Plaintiffs' "boss" and supervised them in Flushing, New York.  (Tr. at 5:16-6:3, 15:2-9.)  These business transactions gave rise to the wage and hour claims in this case.  (Compl. ¶¶ 15, 24).  The Court therefore has personal jurisdiction over Jiang.

### III.     Procedural Compliance with Local Civil Rules 7.1 and 55.2

Plaintiffs filed the following documents in support of the Motion: Notice of Motion (Dkt. 27-1); Memorandum of Law in Support of Plaintiffs' Motion (Dkt. 27-2), declarations and affidavits in support (Dkt. 27-3, 27-4, 27-5); requests and affirmations in support of requests for Certificates of Default (Dkt. 27-6, 27-7, 27-8, 27-9) the Clerk's Certificates of Default (Dkt. 27-10, 27-11); the Complaint (Dkt. 27-12); proposed orders (Dkt. 27-13, 27-14); proof of service of the Complaint (Dkt. 27-15); and proof of mailing of the Motion to the defaulting parties (Dkts. 25, 26.)  These documents comply with the requirements of Local Civil Rules 7.1 and 55.2.

### IV.     Liability Under the FLSA and NYLL

#### A.   Statute of Limitations

The FLSA statute of limitations is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a). "When a defendant defaults, the violation is considered 'willful' and the three year statute of limitations applies."  *Rodriguez v. Queens Convenience Deli Corp.*, No. 09-CV-1089 (KAM)(SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011) (citing *Blue v. Finest Guard Servs., Inc.*, No. 09-CV-133 (ARR), 2010 WL 2927398 (E.D.N.Y. June 24, 2010)).  "The statute of limitations starts to run when

the employee begins to work for the employer." *Id.* (citation omitted).  Under the NYLL, the statute

of limitations is six years.  *See* NYLL §§ 198(3), 663(3).

Shen alleged violations of the FLSA and NYLL beginning with his employment on September

1, 2017 and continuing through May 30, 2018.  (Compl. ¶ 13; Tr. at 14:25-15:1.)  Yu's allegations of

FLSA and NYLL violations began on January 1, 2018 and continued through May 30, 2018.  (Compl.

¶ 14; Tr. at 5:5-7.)  Both Plaintiffs alleged that Defendants "willfully and intentionally committed

widespread violations of the FLSA and NYLL" by failing to pay Plaintiffs at the minimum wage and

overtime wage rates.  They brought this action on April 15, 2020. (*See* Compl.)  Therefore, Plaintiffs'

claims are entirely within the limitations periods of both the FLSA and NYLL.

### B.  Whether the FLSA Applies

To plead a cause of action under the FLSA, Plaintiffs must establish that: (1) defendants are

employers subject to the FLSA; (2) plaintiff is an employee within the meaning of the FLSA; and (3)

the employment relationship is not exempted from the FLSA.  *See Rowe v. CC Rest. & Bakery, Inc.*, No.

17-CV-01423 (CBA)(PK), 2019 WL 4395158, at *4 (E.D.N.Y. Aug. 15, 2019), *R&R adopted*, 2019 WL

4393987 (E.D.N.Y. Sept. 13, 2019).

### 1.  Whether Defendants are Employers

The FLSA broadly describes an employer as "any person [or corporation] acting directly or

indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and does not

define the term "'employer' in the first instance."  *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 (2d Cir.

2013).  "[E]mployment for FLSA purposes [is] a flexible concept to be determined on a case-by-case

basis by review of the totality of the circumstances."  *Id.* at 104 (quoting *Barfield v. New York City Health

& Hosps. Corp.*, 537 F.3d 132, 142 (2d Cir. 2008)).  "[A]n employee may be jointly employed by two

or more employers," and "[i]n such cases, joint employers are subject to joint and several liability for

FLSA violations."  *Michalow v. E. Coast Restoration & Consulting Corp.*, No. 09-CV-5475 (SLT)(RML),

2017 WL 9400690, at *4 (E.D.N.Y. July 11, 2017), *R&R adopted*, 2018 WL 1559762 (E.D.N.Y. Mar. 31, 2018).

A defendant is an employer under the FLSA if it meets the criteria for either enterprise or individual coverage. *See Rowe*, 2019 WL 4395158, at *4. The enterprise coverage test considers whether the employer has employees engaged in commerce or in the production of goods for commerce, "or [ ] has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i)-(ii); *see also Fermin v. Las Delicias Peruanas Rest. Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015). "Commerce" is "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). Even local activities may meet this test if "an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce." *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011) (quoting *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998)). Alternatively, the individual coverage test considers the "employment actions of each" plaintiff to determine whether "the employees themselves are 'engaged in commerce.'" *Rowe*, 2019 WL 4395158, at *4.

Plaintiffs allege that both Defendants are employers within the meaning of the FLSA. (Dkt. 27-2 at 6.)

### a. Defendant GJ Group

The Complaint alleges that GJ Group "purchased and handled goods that were moved in interstate commerce" (Compl. ¶ 18) and that Defendants "are an 'enterprise'" that is "engaged in commerce" (*Id.* ¶ 59). Plaintiffs also presented Yu's testimony, based on knowledge gained in her role as bookkeeper, that GJ Group had monthly sales of approximately $100,000. (Tr. at 12:8-10; *see also* Compl. ¶ 16 (alleging annual gross sales in excess of $500,000).) Given the amount of the restaurant's

annual sales, it can be inferred that some of the materials used to make the food it sold originated in interstate commerce. *Id.* Accordingly, the enterprise test is satisfied, and GJ Group is considered an employer within the meaning of the FLSA. *See Fermin*, 93 F. Supp. 3d at 33 (concluding that defendant "restaurant with an eat-in dining area and over $500,000 in annual sales" was an employer within the meaning of the FLSA because it was reasonable to infer that not all of its sales came exclusively from New York, and that some of the goods used to operate the restaurant "moved or were produced in interstate commerce").

### b. Defendant Jiang

In determining whether an individual is an employer, "[t]he underlying inquiry… is whether the individual possessed operational control over employees …." *Tapia v. BLCH 3rd Ave. LLC*, 906 F.3d 58, 61 (2d Cir. 2018) (per curiam). "[T]o be an 'employer,' an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013). "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Id.* at 110.

The analysis of whether an individual is an "employer" is also guided by the 'economic realities' test set forth in *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8 (2d Cir. 1984). *Irizarry*, 722 F.3d at 110. The factors that the Court may consider are "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Carter*, 735 F.2d at 12 (quoting *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)). "The 'economic reality' test encompasses the totality of circumstances, no one of which is exclusive." *Irizarry*, 722 F.3d at 106 (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)).

The Complaint alleges that Jiang was personally "in charge of all areas of GJ [Group], including the hiring, management, and termination of employees; as well as determining the rates of pay, work schedule (including work hours and work days, type of work assigned, designated work load, and employment policy" during the relevant time period. (Compl. ¶ 22-23; Tr. at 5:16-6:3, 15:2-9.) It similarly alleges that Jiang "also had the ultimate decision-making authority over issues such as whether to pay minimum wages and overtime wages in accordance with the law." (Compl. ¶ 23.) Both Plaintiffs testified that Jiang was their manager and direct supervisor. (Tr. at 5:16-6:3, 15:2-9.) Plaintiffs have, thus, established that Jiang was Plaintiffs' employer within the meaning of the FLSA. *See Moses v. Griffin Indus., LLC*, 369 F. Supp. 3d 538, 544 (S.D.N.Y. 2019) (finding that supervisors were joint employers because they controlled plaintiffs' employment).

### 2. Whether Plaintiffs are Employees

An "employee," under the FLSA, is likewise broadly defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). Shen was employed as a meal shopper, and Yu was employed as a cashier and bookkeeper. For the same reasons that Defendants were "employers," Plaintiffs were their employees. *See Fermin*, 93 F. Supp. 3d at 32. Plaintiffs fall within the FLSA's statutory definition of "employee."

### 3. Whether any FLSA exemption applies

Plaintiffs must show that they are not exempt from the FLSA's protections. *Fermin*, 93 F. Supp. 3d at 32. The FLSA "contains a litany of exemptions," *id.* (internal quotation marks and citations omitted), including those "employed in a bona fide executive, administrative, or professional capacity," 29 U.S.C. § 213(a)(1), defined as one "whose primary duty is management of the enterprise, … and who has the authority to hire or fire other employees…." *See* 29 C.F.R. § 541.100.

None of these exemptions apply to Shen and Yu. Shen was a meal shopper for Defendants, who shopped for foods because some of GJ Group's "food materials were ordered from other

companies in the area." (Compl. ¶ 13; Tr. at 17:7-19.) Yu worked as a cashier at the front desk of the restaurant and a bookkeeper from home, where she "had to record every transaction in terms of the payment method," "calculate the hours that each worker worked according to their time card," and "calculate the total revenue of that day and total expense of that day" through a manual process. (Compl. ¶ 14; Tr. at 9:23-10:8, 13:25-14:8.) Their job tasks did not entail the executive, administrative, professional or management duties necessary to exempt them from the FLSA.

Because Defendants satisfy the definition of employer, Plaintiffs satisfy the definition of employee, and no exemption applies, the undersigned finds that Plaintiffs may bring a claim against Defendants under the FLSA.

### C.  Whether the NYLL Applies

To prevail on a NYLL claim, Plaintiffs must establish that their employment relationship with Defendants falls within the NYLL, which applies to "any person employed for hire by an employer in any employment." NYLL § 190. "Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law." *Garcia v. Badyna*, No. 13-CV-4021 (RRM)(CLP), 2014 WL 4728287, at *6 (E.D.N.Y. Sept. 23, 2014). Otherwise, the NYLL's definition of "employer" is "nearly identical" to that of the FLSA, and the analysis of the employment relationship under both statutes is based on the same factors. *See Mahoney v. Amekk Corp.*, No. 14-CV-4131 (ENV)(VMS), 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016), *R&R adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016) (collecting cases holding that the FLSA and NYLL are interpreted consistently with one another on the question of employer status). Because Plaintiff had an employer-employee relationship with Defendants under the FLSA, they also had an employer-employee relationship under the NYLL. Plaintiff has shown that the NYLL applies.

### D.  Plaintiffs' Minimum Wage Claims

Plaintiffs allege that they did not receive any wages for work they performed from March 19,

2018 through April 15, 2018 and are therefore entitled to minimum wage during that period.  (Pls'
Letter at 2, 4.)

Under both the FLSA and the NYLL, employees must be paid at least the minimum hourly
wage for each hour that they work.  29 U.S.C. § 206; NYLL § 652.  "Plaintiff is entitled to recover the
higher of the applicable federal or state minimum wage."  *Montellano-Espana v. Cooking Light Inc.,* No.
14-CV-1433 (SJ) (RLM), 2016 WL 4147143, at *4 (E.D.N.Y. Aug. 4, 2016) (citing 29 U.S.C. § 218(a)
and NYLL § 652(1)).

The federal minimum wage has been $7.25 per hour since July 24, 2009.  *See* U.S. Dep't of
Labor, *History of Federal Minimum Wage Rates Under the Fair Labor Standards Act, 1938-2009*,
https://www.dol.gov/agencies/whd/minimum-wage/history/chart (last visited Aug. 15, 2021).

The New York minimum wage was higher than the federal minimum wage during the relevant
period.  Plaintiffs calculate their damages using the minimum wages applicable to "large employers,"
defined as those with "eleven or more employees," NYLL § 652(1)(a)(i).  (*See* Pls' Letter at 2.)  Yu
recalled that, during the relevant time, Defendants "consistently employed between 16 and 19
employees," including Plaintiffs Yu and Shen.  (Affidavit of Plaintiff Xiaoxia Yu, Dkt. 30-1 ¶ 4.)
Defendants were, thus, required to pay the minimum wage applicable to large employers.  The
minimum wage in New York City applicable to "large employers" from December 31, 2016 to
December 30, 2017 was $11.00 per hour.  From December 31, 2017 to December 20, 2018, the
minimum wage was $13.00.  NYLL § 652(1)(a)(i).

Because Plaintiffs did not receive any wages for their work from March 19, 2018 through April
15, 2018, they are entitled to recover at the New York minimum wage rate applicable to large
employers for every hour they worked during that time.

**E.  Overtime**

Under both the FLSA and the NYLL, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." *Nakahata v. New York-Presbyterian Health Care Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a) and 12 N.Y.C.R.R. § 142-2.2)).

"To plead a plausible FLSA overtime claim, Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Nakahata*, 723 F.3d at 201.  While there is not "an all-purpose pleading template [for] alleging overtime," plaintiffs must "provide some factual context that will 'nudge' their claim 'from conceivable to plausible.'" *DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Plaintiffs allege that they were paid the same daily rate, regardless of whether they worked more than 40 hours a week.  (Compl. ¶¶ 31, 76.)  Shen worked twelve hours per day five or six days each week and was paid a flat daily amount of $120.00 per day, even though he worked 60 or 72 hours each week.  (*Id.* ¶ 29; *see* Tr. at 15:22-16:20.)  Yu worked four days a week as a cashier and bookkeeper for approximately 15 or 15.5 hours, and three days a week just as a bookkeeper for approximately 3 or 3.5 hours, a total of approximately 69 to 72.5 hours a week.  (*See* Tr. at 6:17-9:5.)  She was paid a flat daily rate of $50.00 if she worked only as a bookkeeper, or $170.00 if she also worked as a cashier.  (Compl. ¶¶ 46-47.)  Yu was not paid at an overtime rate for the hours she worked over forty each week.

These allegations thus establish Defendants' liability for failure to pay Plaintiffs overtime under both the FLSA and NYLL. *See Newman v. W. Bar & Lounge, Inc.*, No. 20-CV-1141 (KAM)(RER), 2021 WL 2401176, at *7 (E.D.N.Y. June 11, 2021) (plaintiff's sworn statement estimating his schedule and pay sufficient to establish overtime liability under FLSA and NYLL).

### F. Spread of Hours

All employees in restaurants are entitled to spread of hours pay.  12 N.Y.C.R.R. § 146-1.6.

"The spread of hours is the length of the interval between the beginning and end of an employee's

workday."  *Id.*  "On each day on which the spread of hours exceeds 10, an employee shall receive one

additional hour of pay at the basic minimum hourly rate."  12 N.Y.C.R.R. § 146-1.6(a).

Shen alleged that he worked 12 hours each day he worked and was not paid spread-of-hours

compensation.  (Pls' Letter at 2.)  Yu alleged that she worked  18 or 19 hours four days per week and

was not paid spread-of-hours compensation.  (*Id.* at 4.)  These allegations are sufficient to establish

that Defendants did not comply with New York's spread of hours requirement.  *See Chen v. Y Café Ave*

*B Inc.*, No. 18-CV-4193 (JPO), 2019 WL 2324567, at *4 (S.D.N.Y. May 30, 2019) (finding that

plaintiff's "alleg[ations] that he worked more than 10 hours every day, but [d]efendants have never

paid him the extra spread-of-hours compensation" was sufficient to establish on a default judgment

motion that defendants violated the NYLL (citation omitted)).

### G. Wage Notice and Statement Claims

Plaintiffs alleged violations of NYLL §§ 195(1) and 195(3), the statute's wage notice and

statement provisions.  (Compl. ¶¶ 108-111.)  Section 195(1)(a) requires employers to provide

employees at the time of hiring with a wage notice containing, *inter alia,* the rate of pay, the basis

thereof, and pay schedule.  Section 195(3) requires employers to provide employees with "a statement

with every payment of wages," listing various information including the dates of work covered by the

payment, information identifying the employer and employee, details regarding the rate of pay and the

overtime rate of pay, and the number of hours worked.

Here, Plaintiffs alleged that they never received wage notices or statements from Defendants.

(Compl. ¶ 116.)  Their allegations are sufficient to support a violation of the wage notice and statement

provisions of the NYLL.

V.    **Damages**

A.    **Minimum Wage Damages**

As explained above, the New York minimum wage was higher than the federal minimum wage for the entire period of Plaintiffs' employment.  In light of the principle that "the law providing the greatest recovery will govern," *Charvac v. M & T Project Managers of New York, Inc.*, No. 12-CV-5637 (CBA)(RER), 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015) (citation omitted), Plaintiffs are entitled to recovery based on the New York minimum wage.  Because Plaintiffs received no pay from March 19, 2018 through April 15, 2018, Plaintiffs are entitled to the full minimum wage for all the hours they worked during this four-week period.  (Pls' Letter at 2, 4.)

From March 19, 2018 through April 15, 2018, Plaintiff Shen worked 12 hours per day or 72 hours per week during the three weeks that he worked six days per week (6 days per week x 12 hours per day).  He worked 60 hours per week during the one week that he worked five days per week (5 days per week x 12 hours per day).  (*See* Tr. at 15:22-16:20.)  Since he was not paid for any of these hours, Shen is entitled to $2,808.00 for the three weeks that he worked six days per week ($13.00 x 72 hours per week x 3 weeks) and $780.00 for the week that he worked five days ($13.00 x 60 hours per week x 1 week) in minimum wage damages.

| Plaintiff Shen | | | | | | | |
|---|---|---|---|---|---|---|---|
| Time Period | Days Worked Per Week | NY Minimum Wage | Hours Per Week | No. of Weeks | Amount Paid Per Week | Weekly Underpayments | Total Underpayments |
| March 19, 2018-April 15, 2018 | 6 | $13.00 | 72 | 3 | $0.00 | $936.00 | $2,808.00 |
| | 5 | | 60 | 1 | | $780.00 | $780.00 |
| | | | | | | | Total: $3,588.00 |

From March 19, 2018 through April 15, 2018, Plaintiff Yu worked 69 to 72.5 hours per week. (*See* Tr. at 6:17-9:5.)  For ease of calculation, 70.75 hours is used as the average number of hours Yu

worked each week.  Since she was not paid for any of the time she worked during these four weeks, Yu is entitled to $3,679.00 in minimum wage damages.

| Plaintiff Yu | | | | | | | |
|---|---|---|---|---|---|---|---|
| Time Period | Days Worked Per Week | NY Minimum Wage | Hours Per Week | No. of Weeks | Amount Paid Per Week | Weekly Underpayments | Total Underpayments |
| March 19, 2018-April 15, 2018 | 7 | $13.00 | 70.75 | 4 | $0 | $919.75 | $3,679.00 |

Accordingly, the undersigned respectfully recommends that Shen be awarded $3,588.00 and Yu be awarded $3,679.00 in minimum wage damages for the period from March 19, 2018 through April 15, 2018.

### B.  Overtime Damages

The FLSA and NYLL both mandate that for every hour worked over forty per week, overtime wages must be paid at a rate of one and a half times the regular rate of pay, 29 U.S.C. § 207(a); 12 N.Y.C.R.R. § 142-2.2.  For the weeks when Plaintiffs were entitled to minimum wage for every hour worked, their overtime rate consists of a 0.5 premium over the minimum wage rate.

When an employee is paid a weekly salary, however, "the regulations promulgated pursuant to the [FLSA and NYLL] differ with respect to the determination of the 'regular rate of pay'…." *Quiroz v. Luigi's Dolceria, Inc.*, No. 14-CV-871 (VVP), 2016 WL 2869780, at *3 (E.D.N.Y. May 17, 2016). Pursuant to the FLSA, the "regular rate of pay" is computed by "dividing the salary by the number of hours which the salary is intended to compensate."  *Id.* (quoting 29 C.F.R. § 778.113 (2016)).  While "there is a rebuttable presumption that a weekly salary covers 40 hours[,] the employer can rebut the presumption by showing an employer-employee agreement that the salary cover[s] a different number of hours."  *Id.* (quotations omitted).

16

By contrast, New York's Hospitality Industry Wage Order ("Hospitality Wage Order"), promulgated pursuant to the NYLL, states that "when an employer fails to pay an employee an hourly rate of pay, the employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.5(b); *see also Jianmin Jin & Chunyou Xie v. Shanghai Original, Inc. et al.*, No. 16CV5633 (ARR) (JO), 2019 WL 3244187, at *4 (E.D.N.Y. July 19, 2019); *Romero v. Rung Charoen Sub, Inc.*, No. 16 CIV. 1239 (VMS), 2017 WL 4480758, at *10 (E.D.N.Y. Sept. 30, 2017). Unlike the FLSA and those NYLL provisions covering the non-hospitality industry, the Hospitality Wage Order contains no mechanism for rebutting the calculation based on a maximum 40-hour work week with evidence that the employee had an agreement with the employer to work more than 40 hours a week.

As employees of a restaurant, Plaintiffs are subject to the Hospitality Wage Order. *See generally* N.Y. Comp. Codes R. & Regs. tit. 12 Part 146[5]; *see also Long Lin v. New Fresca Tortilla, Inc.*, No. 18-CV-3246 (RJD)(RER), 2019 WL 3716199, at *3 (E.D.N.Y. May 1, 2019), *R&R adopted*, 2019 WL 3714600 (E.D.N.Y. May 28, 2019).

### 1. **Plaintiff Shen's Overtime Damages**

Every week from September 1, 2017 to March 18, 2018 and April 16, 2018 to May 30, 2018, Shen was entitled to be paid for all hours worked over 40 at the overtime rate of 1.5 times his regular hourly rate. Pursuant to the Hospitality Wage Order, his regular rate of pay is calculated by dividing his weekly pay by 40.

---

[5] The Order applies to "[e]very employer in the hospitality industry," which "includes any restaurant" defined as "any eating or drinking place that prepares and offers food or beverage for human consumption either on any of its premises or by such service as catering, banquet, box lunch, curb service or counter service to the public." N.Y. Comp. Codes R. & Regs. tit. 12 §§ 146-1.1(a), 146-3.1(a), 146-3.1(b).

On the weeks when he was paid $720.00, his regular rate of pay was $18.00 per hour ($720/40); thus, his overtime rate was $27.00 per hour ($18 x 1.5). On the weeks when he was paid $600.00, his regular rate of pay was $15.00 per hour ($600/40), with an overtime rate of $22.50 per hour ($15 x 1.5).

From March 19, 2018 through April 15, 2018, Shen's regular rate of pay was the New York minimum wage of $13.00. Thus, his overtime rate was $19.50. Because he is already receiving damages of minimum wage for all his hours worked, he is only entitled to the additional amount of the overtime premium (0.5 x $13 = $6.50) for any hours he worked over 40 each week.

| Plaintiff Shen | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Time Period | Hours Per Week | Weekly Amount Paid | Effective Hourly Rate | Overtime Rate or Premium Due | No. of Overtime Hours | Overtime Amount Owed Per Week | No. of Weeks | Overtime Amount Owed |
| Sept. 1, 2017 to March 18, 2018 | 72 | $720.00 | $18.00 | $27.00 | 32 | $864.00 | 21 | $18,144.00 |
| | 60 | $600.00 | $15.00 | $22.50 | 20 | $450.00 | 7 | $3,150.00 |
| March 19, 2018 to April 15, 2018 | 72 | -- | $13.00 | $6.50 | 32 | $208.00 | 3 | $624.00 |
| | 60 | -- | $13.00 | $6.50 | 20 | $130.00 | 1 | $130.00 |
| April 16, 2018 to May 30, 2018 | 72 | $720.00 | $18.00 | $27.00 | 32 | $864.00 | 5 | $4,320.00 |
| | 60 | $600.00 | $15.00 | $22.50 | 20 | $450.00 | 1 | $450.00 |
| | | | | | | | | Total: $26,818.00 |

2. **Plaintiff Yu's Overtime Damages**

Every week from January 1, 2018 to March 18, 2018 and April 16, 2018 to May 30, 2018, Yu was entitled to be paid for all hours worked over 40 at the overtime rate of 1.5 times her hourly rate.

Pursuant to the Hospitality Wage Order, Yu's regular rate of pay is calculated by dividing her weekly pay by 40.

Yu was paid $660.00 each week; thus, her regular rate of pay was $16.50 ($660/40). Her overtime rate was therefore $24.75 ($16.50 x 1.5).

From March 19, 2018 through April 15, 2018, Yu's regular rate of pay was the New York minimum wage of $13.00 and her overtime rate was $19.50. Because she is already receiving damages of minimum wage for all the hours she worked, she is only entitled to the additional amount of the overtime premium (0.5 x $13 = $6.50) for any hours she worked over 40 each week.

| Plaintiff Yu | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Time Period | Hours Per Week | Weekly Amount Paid | Effective Hourly Rate | Overtime Rate or Premium | No. of Overtime Hours | Overtime Amount Owed Per Week | No. of Weeks | Overtime Amount Owed |
| Jan. 1, 2018 to March 18, 2018 | 70.75 | $660.00 | $16.50 | $24.75 | 30.75 | $761.06 | 11 | $8,371.66 |
| March 19, 2018 to April 15, 2018 | 70.75 | -- | $13.00 | $6.50 | 30.75 | $199.88 | 4 | $799.52 |
| April 16, 2018 to May 30, 2018 | 70.75 | $660.00 | $16.50 | $24.75 | 30.75 | $761.06 | 6 | $4,566.36 |
| | | | | | | | | Total: $13,737.54 |

Accordingly, the undersigned respectfully recommends that Shen be awarded $26,818.00 in unpaid overtime wages and Yu be awarded $13,737.54 in unpaid overtime wages.

### C. Wage Notice and Wage Statement Damages

Violations of NYLL § 195(1) carry damages of $50 per workday, for a maximum of $5,000, along with costs and attorney's fees.  NYLL § 198(1-b).  Violations of NYLL § 195(3) carry damages of $250 per workday, for a maximum of $5,000, along with costs and attorney's fees.  NYLL § 198(1-d).

Because Plaintiffs never received wage notice or wage statements from Defendants, and because Plaintiffs worked for Defendants for more than 100 days, they are entitled to the maximum damages under both provisions.

Accordingly, the undersigned respectfully recommends Plaintiffs each be awarded $5,000 in damages under Section 195(1) and $5,000 in damages under Section 195(3).

### D. Spread of Hours

Pursuant to NYLL, Plaintiffs are entitled to spread-of-hours pay equal to "one additional hour of pay at the basic minimum hourly rate" for each day in which spread of hours exceeds 10 hours.  12 N.Y.C.R.R. § 146-1.6(a).

Shen worked twelve hours every day throughout his employment at GJ Group.  (*See* Tr. at 17:22-18:23.)  Therefore, he is entitled to spread of hours pay at the minimum wage rate for each day he worked.

| Plaintiff Shen | | | | | |
|---|---|---|---|---|---|
| Time Period | New York Minimum Wage | Days Worked More Than 10 Hours Each Week | No. of Weeks | Total Days | Spread of Hours Damages |
| Sept. 1, 2017 to Dec. 30, 2017 | $11.00 | 6 | 13 | 78 | $858.00 |
| | | 5 | 4 | 20 | $220.00 |
| Dec. 31, 2017 to May 30, 2018 | $13.00 | 6 | 18 | 108 | $1,404.00 |
| | | 5 | 6 | 30 | $390.00 |
| | | | | | Total: $2,872.00 |

On the days when Yu worked both as a cashier and a bookkeeper, she worked 15 to 15.5 hours each day. (Tr. at 7:17-9:5.) When she only worked as a bookkeeper, she worked approximately three or three and a half hours. (*Id.*) Thus, Yu is entitled to spread of hours pay for the four days each week that she worked more than 10 hours, a total of 84 days between January 1, 2018 and May 30, 2018 (4 days x 21 weeks = 84).

| Plaintiff Yu | | | | | |
|---|---|---|---|---|---|
| Time Period | New York Minimum Wage | Days Worked More Than 10 Hours Each Week | No. of Weeks | Total Days | Spread of Hours Damages |
| Jan. 1, 2018 to May 30, 2018 | $13.00 | 4 | 21 | 84 | $1,092.00 |

Accordingly, the undersigned respectfully recommends that Shen be awarded $2,872.00 and Yu be awarded $1,092.00 in spread of hours damages under 12 N.Y.C.R.R. § 146-1.6(a).

### E. Liquidated Damages

Under the FLSA and the NYLL, an employee may recover liquidated damages equal to the total amount of wages owed. 29 U.S.C. § 216(b); NYLL § 198(1-a). If the employer shows that "the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA or NYLL, a court may decide not to award liquidated damages. 29 U.S.C. § 260; *see* NYLL § 198(1-a) (granting same good-faith exception to liquidated damages). Because Defendants did not respond to the Motion, there is no showing of good faith, and liquidated damages are appropriate. *See Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695 (ARR)(MDG), 2015 WL 1529653, at *12 (E.D.N.Y. Mar. 31, 2015) (defaulting defendants did not show good faith).

The Second Circuit has interpreted the NYLL to preclude the award of double liquidated damages—that is, liquidated damages under both the NYLL and FLSA. *See Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018). In light of the principle that "the law providing the greatest recovery will

govern," Plaintiffs may be awarded liquidated damages pursuant to the NYLL or the FLSA. *Charvac v. M&T Project Managers of N.Y., Inc.*, No. 12-CV-5637 (CBA)(RER), 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015) (citation omitted). Liquidated damages are not available for violations of the NYLL wage notice or wage statement provisions. *See* NYLL § 198(1-a), (1-d).

Here, Plaintiffs requested liquidated damages under both the NYLL and FLSA. (Dkt. 27-2 at 2.) Because the undersigned is recommending that Shen be awarded minimum, overtime and spread of hours wages under the NYLL of $26,818.00, $2,872.00 and $3,588.00, and that Yu be awarded minimum, overtime and spread of hours wages under the NYLL of $13,737.54, $1,092.00 and $3,679.00, it is respectfully recommended that Shen be awarded liquidated damages under the NYLL of $33,278.00 and Yu be awarded liquidated damages under the NYLL of $18,508.54.

### F. Prejudgment Interest

Plaintiffs seek prejudgment interest under the NYLL. (Compl. ¶ 7; Declaration of Baya Harrison, Esq. ("Harrison Decl."), Dkt. 19 ¶ 19.) Prejudgment interest is available for underpayments under the NYLL, which in this case includes minimum wages, overtime wages, and spread of hours compensation. *See* NYLL § 198(1-a). Prejudgment interest is not available for wage statement or notice violations, or for liquidated damages. *Ying Ying Dai v. ABNS NY Inc.*, 490 F. Supp. 3d 645, 662 (E.D.N.Y. 2020). A plaintiff may seek prejudgment interest on any underpayment, in addition to liquidated damages. *See Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 265 (2d Cir. 1999) ("Pre-judgment interest and liquidated damages under the Labor Law are not functional equivalents.")

In New York, prejudgment interest accrues at the statutory rate of nine percent per year. N.Y. C.P.L.R. § 5004. "Where [] damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." *Id.* § 5001(b). Courts have "wide discretion in determining a reasonable date from which to award pre-judgment interest." *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994). "Most

courts in this district calculate simple prejudgment interest in NYLL actions from the midpoint date of the claims through the date judgment is entered." *Perez Campos v. Quentin Mkt. Corp.*, No. 16-CV-05303, 2018 WL 9945754, at *8 (E.D.N.Y. Oct. 17, 2018) (citing *Fermin*, 93 F.Supp.3d at 49.)  Other courts have used the midpoint between the first and last dates of the plaintiff's NYLL claims.  *See, e.g.*, *Hernandez v. NJK Contractors, Inc.*, 09-CV-4812 (RER), 2015 WL 1966355, at *51 (E.D.N.Y. May 1, 2015).

Plaintiffs do not specify a date from which to calculate pre-judgment interest.  The undersigned uses the mid-point of each Plaintiff's employment period.  Shen worked for Defendants from September 1, 2017 to May 30, 2018, a total of 271 days.  (Compl. ¶ 13; Tr. at 9:19-22, 14:25-15:1.)    The midpoint is January 14, 2018.  Yu worked for Defendants from January 1, 2018 to May 30, 2018, a total of 149 days.  (Compl. ¶ 14; Tr. at 5:5-7, 13:25-14:8.)  The midpoint is March 16, 2018.

Shen's damages for minimum wage, overtime and spread of hours claims are $33,278.00.  Prejudgment interest on those damages at a rate of nine percent per year is $2,995.02.  That amount divided by 365 days in a year results in daily interest of $8.21.   Accordingly, the undersigned respectfully recommends that Shen be awarded prejudgment interest of $8.21 per day from January 14, 2018 through the entry of judgment.

Yu's damages for minimum wage, overtime and spread of hours claims are $18,508.54.  Prejudgment interest on those damages at a rate of nine percent per year is $1,665.77.  That amount divided by 365 days in a year results in daily interest of $4.56.   Accordingly, the undersigned respectfully recommends that Yu be awarded prejudgment interest of $4.56 per day from March 16, 2018 through the entry of judgment.

### G.  Post-Judgment Interest

Plaintiffs seek post-judgment interest (Compl. ¶ 7), which "shall be allowed on any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961(a); *see, e.g., Fermin*, 93 F. Supp.

3d at 53. Accordingly, the undersigned recommends that Plaintiffs be granted post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

### H. Fifteen Percent Increase Penalty if Damages Not Paid Within Ninety Days

New York Labor Law provides that "any judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." NYLL § 198(4); *see also Rodriguez v. Solares Corp.*, No. 16-CV-3922 (CBA)(SMG), 2018 WL 7252949, at *12 (E.D.N.Y. Aug. 14, 2018), *R&R adopted*, 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019). Accordingly, the undersigned respectfully recommends that if Defendants fail to satisfy the judgment within the stated deadlines, Plaintiffs be entitled to a fifteen percent increase in the amount of damages owed to them.

### VI.    Joint and Several Liability

When multiple defendants are found to be a plaintiffs' employer, "each [d]efendant is jointly and severally liable under the FLSA and NYLL for any damages awards made in [that] [p]laintiff['s] favor." *Fermin*, 93 F. Supp. 3d at 37; *see also Pineda v. Masonry Constr., Inc.*, 831 F. Supp. 2d 666, 685-86 (S.D.N.Y. 2011) (holding that plaintiff's allegations that the individual defendant "was an owner, partner, or manager" of the corporate defendant, "coupled with [d]efendants' default, suffice to . . . impose joint and several liability on each [defendant] for their respective violations of the wage laws." (quotation and citation omitted)).

GJ Group and Jiang were Plaintiffs' joint employers. Therefore, each Defendant is jointly and severally liable under the FLSA and the NYLL for any damages award made in Plaintiffs' favor. *See Pineda v. Masonry Const., Inc.*, 831 F. Supp. 2d 666, 686 (S.D.N.Y. 2011) (finding allegations that an

individual defendant "was an owner, partner, or manager," coupled with his default, was sufficient to qualify him as an FLSA and a NYLL employer, and to impose joint and several liability with corporate defendant for wage law violation).

Accordingly, the undersigned respectfully recommends that GJ Group and Jiang be found jointly and severally liable for the damages awarded to Plaintiffs.

## VII.    Attorneys' Fees and Costs

Prevailing plaintiffs are allowed to recover reasonable attorneys' fees and costs under both the FLSA and the NYLL. *See* 29 U.S.C. § 216(b); NYLL § 663(1). Plaintiffs request attorneys' fees in the amount of $10,475.00 and disbursements and costs in the amount of $775.03. (Harrison Aff.; Supporting Affirmation of Baya Harrison, Esq., Dkt. 27-5; Dkt. 19-1. [6])

### 1.    Attorneys' Fees

District courts have broad discretion to determine the amount of attorneys' fees awarded, and the party requesting fees must submit documentation to support its request. *Mahoney*, 2016 WL 6585810, at *18. Courts must "us[e] their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of each component of a fee award." *Century 21 Real Estate LLC v. Bercosa Corp.*, 666 F. Supp. 2d 274, 298 (E.D.N.Y. 2009) (quotation and citation omitted).

"[T]he lodestar method—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). Courts determine what constitutes a reasonable hourly rate through application of "the forum rule," which states that "courts should generally use the hourly rates employed in the district in which the reviewing court sits." *Simmons v. N.Y.C. Transit Auth.*, 575

---

[6] Plaintiffs filed their attorneys' contemporaneous time records on Oct. 11, 2019 at Dkt. 19-1 and the amounts requested in Plaintiffs' attorney's affirmation at Dkt. 27-5 are unchanged from the attorney's previously filed affirmation at Dkt. 19. (Response to Aug. 18, 2021 Order to Show Cause, Dkt. 30 ¶¶ 2-3.)

F.3d 170, 174 (2d Cir. 2009) (quotations and citation omitted). "If the Court finds that some of the time [the attorney billed] was not reasonably necessary[,] it should reduce the time for which compensation is awarded accordingly." *Mister Softee, Inc. v. Konstantakakos*, No. 15-CV-4770 (SJ)(SMG), 2016 WL 11445964, at *6 (E.D.N.Y. June 27, 2016), *R&R adopted*, 2016 WL 4250314 (E.D.N.Y. Aug. 11, 2016) (quotation and citation omitted). "Where time entries are vague, duplicative, or otherwise inadequate, a court may make 'an across-the-board reduction or percentage cut, in the amount of hours.'" *Id.* (quoting *T.S. Haulers, Inc. v. Cardinale*, No. 9-CV-451 (SJF)(ARL), 2011 WL 344759, at *3 (E.D.N.Y. Jan. 31, 2011)). "Inadequate documentation" is another "ground[ ] for reduction of a fee award." *Bercosa Corp.*, 666 F. Supp. 2d at 299 (citation omitted).

## 1. Hourly Rate

Plaintiffs' counsel, Baya Harrison, has been practicing law since 2014 and started his law practice in January 2019. (Affirmation of Baya Harrison, Esq. ¶ 21.) Harrison's practice mainly consists of civil litigation and he is fluent in Mandarin Chinese. (*Id.*) Harrison is requesting a rate of $250 per hour.

Court in this district have held that $225 per hour is a reasonable rate for an attorney with experience similar to Harrison in an FLSA default judgment case that is routine in nature. *See Lopez v. PMMT Inc.*, No. 14CIV2057FBVMS, 2016 WL 7633264, at *15 (E.D.N.Y. Aug. 25, 2016), *R&R adopted,* No. 14CV2057FBVMS, 2017 WL 27943 (E.D.N.Y. Jan. 3, 2017) (awarding hourly rate of $225 to attorney with six years of experience). A rate of $250 per hour is more reasonable for attorneys with a few more years of experience than Harrison. *See Jemine v. Dennis*, 901 F. Supp. 2d 365, 392 (E.D.N.Y. 2012) (finding that compensation of $250 per hour to be reasonable for an associate practicing employment law for nearly nine years).

Accordingly, the undersigned respectfully recommends that Harrison's hourly rate be reduced to $225.

## 2. Reasonableness of Time Billed

In determining a reasonable number of hours, district courts should "exclude excessive, redundant or otherwise unnecessary hours." *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999). Counsel billed a total of 41.9 hours. (*See* Timesheets, Dkt. 19-1.) Upon examining the Timesheets, the undersigned finds the number of hours billed to be excessive. For example, a total of 14.8 hours is billed to drafting the Complaint, which is an uncomplicated document, asserting routine claims in a well-established area of law. Only half of those hours are reasonable for a lawyer of Harrison's experience level; accordingly, this amount will be reduced by 7.4 hours.

In addition, several entries appear administrative in nature. For example, more than two hours are devoted to service issues, including submitting a proposed summons, obtaining and filing affidavits of service, and coordinating service efforts with the process server. (*See* Timesheets at entries for May 14, 2019, June 14, 2019, July 29, 2019.) Such administrative tasks should not be performed by a lawyer. *Callari v. Blackman Plumbing Supply, Inc.*, No. 11-CV-3655 (ADS)(AKT), 2020 WL 2771008 at *12 (E.D.N.Y. May 4, 2020), *R&R adopted*, 2020 WL 2769266 (E.D.N.Y. May 28, 2020) (explaining that tasks like "review[ing] electronic orders and case management orders, [and] fil[ing] documents on ECF . . . should have been conducted by a paralegal"). This amount is reduced by half (one hour).

Accordingly, counsel's hourly rate is reduced to $225 and the number of hours billed is reduced to 33.5, resulting in reasonable attorneys' fees of $7,537.50.

## 2. Costs

Plaintiffs seek $775.03 in costs, comprised of $329 for service of process, $400 for filing the Complaint, and $46.03 for shipping costs. (Dkt. 19-1 at 10-11.)

The undersigned takes judicial notice of the $400 court filing fee. *See Joe Hand Promotions, Inc. v. Bernal*, No. 18-CV-85 (ILG)(SJB), 2019 WL 885930, at *6 (E.D.N.Y. Feb. 22, 2019) (awarding plaintiff the $400 filing fee after taking judicial notice of it). Plaintiffs submitted an invoice to support

their requested service costs (Dkt. 12-5), and provided details to support their shipping costs,[7] which are reasonable.

Accordingly, the undersigned respectfully recommends that Plaintiffs be awarded $775.03 in costs.

## CONCLUSION

Based on the foregoing, the undersigned recommends that a default judgment be entered against Defendants, finding them jointly and severally liable, and that Plaintiffs be awarded the following damages:

(i) **$3,588.00** in unpaid minimum wages to Shen and **$3,679.00** in unpaid minimum wages to Yu;

(ii) **$26,818.00** in unpaid overtime wages to Shen and **$13,737.54** in unpaid overtime wages to Yu;

(iii) **$2,872.00** in spread-of-hour wages to Shen and **$1,092.00** in spread-of-hour wages to Yu;

(iv) **$33,278.00** in liquidated damages to Shen and **$18,508.54** in liquidated damages to Yu;

(v) **$5,000** in statutory damages for the NYLL wage notice claim each to Shen and to Yu;

(vi) **$5,000** in statutory damages for the NYLL wage statement claim each to Shen and to Yu;

---

[7] Plaintiffs spent $14.70 to send the request for the certificate of default to Jiang at two addresses and $31.33 to send a demand letter to GJ Group and Jiang. (Dkt. 19-1 at 10-11.)

(vii)     Prejudgment interest to Shen in the amount of **$8.21** per day from January 14, 2018 through the entry of judgment and to Yu in the amount of **$4.56** per day from March 16, 2018 through the entry of judgment;

(viii)    Post-judgment interest as provided in 28 U.S.C. § 1961, to run from the date of judgment until the judgment is satisfied;

(ix)      **$7,537.50** in attorneys' fees and **$775.03** in disbursements and costs; and

(x)       A 15% increase to any damage award if Defendants fail to pay the judgment within 90 days of the issuance of judgment or 90 days after expiration of the time to appeal, whichever is later, pursuant to NYLL § 198(4).

Plaintiffs are directed to serve this Report and Recommendation on Defendants forthwith and file proof of service on the docket by September 10, 2021.  Any objection to this Report must be filed in writing with the Clerk of Court within fourteen (14) days of service.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to timely file any such objection waives the right to appeal the District Court's Order.  *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:     Brooklyn, New York
            September 8, 2021